UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TRAVELERS CASUALTY AND
SURETY COMPANY,

    Plaintiff,

v.                                          CASE NO: 8:03-cv-2548-T-23TGW

CITIBANK (SOUTH DAKOTA), N.A.,

    Defendant.
_____/

## ORDER

Travelers Casualty and Surety Company ("Travelers") is a Connecticut corporation and the assignee and subrogee of BBC International, Ltd., ("BBC"), a footwear company in Boca Raton, Florida. Citibank (South Dakota), N.A., ("Citibank"), is a credit card bank located in South Dakota.

Dianne Rodriguez, a former BBC employee, embezzled over $123,000 by misappropriating corporate checks. Rodriguez paid her and her husband's AT&T credit card bills by misdirecting BBC's corporate checks through a Citibank operated payment processing center. United States Magistrate Judge Wilson's September 9, 2005, report (Doc. 70), adopted on November 17, 2005 (Doc. 73), recommends summary judgment to the defendant on the plaintiff's claims for conversion, unjust enrichment, and violation of Section 673.3061, Florida Statutes. From December 11 through December 14, 2006, the parties tried before the bench whether the defendant demonstrated "reasonable standards of fair dealing required to establish the defendant's status as a holder in due

course," and, if not, whether the defendant negligently processed the corporate checks (Doc. 73 at 2).

## Findings of Fact

While employed by BBC from 2000 to 2002, Rodriguez held with her husband an "AT&T Universal" credit card account (Doc. 115 at 2). From December 20, 2000, through May 31, 2002, Rodriguez mailed to Citibank's AT&T Universal Card payment facility in Hackensack, New Jersey, forty-one checks payable to either "AT&T Universal," "AT&T Uni," or "AT&T," and drawn from BBC's SunTrust bank account (Doc. 113 at 131). Each check contained Citibank's payment address and the signatures of two BBC officers (Doc. 111 at 172). Not one of the forty-one checks was forged, inauthentic, or otherwise defective (Doc. 113 at 80).

During the two years of her scheme, Rodriguez presented invoices for approval to Donald Wilborn, BBC's chief executive officer. After Wilborn's approval Rodriguez changed the payee's address from AT&T's address to the address of Citibank's credit card payment center (Doc. 110 at 56; Doc. 104 at 13; Doc. 113 at 92). As a result of Rodriguez's change, BBC's checks featured the address of Citibank's payment processing center for the Rodriguezes' AT&T Universal card (Doc. 112 at 173). Rodriguez printed each check, presented the check to two BBC executives for signature, wrote her or her husband's personal AT&T account number on the check, placed the check in a BBC envelope, and mailed the check to Citibank (Doc. 110 at 55-60, 170). Rodriguez's diversion of money caused BBC's total payment to AT&T to exceed the amounts actually owed by BBC to AT&T.

BBC failed to discover Rodriguez's scheme until August, 2002 (Doc. 110 at 73). However, throughout Rodriguez's employment she repeatedly committed bookkeeping errors (Doc. 113 at 121).  Rodriguez's supervisor, Charles Messner, recognized Rodriguez's habitual accounting inaccuracy, but he failed to dismiss her or effectively supervise her (Doc. 113 at 138-39).  In particular, BBC failed to recognize that Rodriguez processed checks for the same amount more than once, that check amounts exceeded an internally authorized limit, and that the payee's address on the checks differed from the remittance address on invoices (Doc. 113 at 99, 123, 146, 151, 169). Rodriguez's suspicious behavior was persistent and readily ascertainable by BBC.

BBC finally recognized Rodriguez's scheme after two years of her illicit activity (Doc. 112 at 100).  In August, 2002, Rodriguez pleaded guilty to grand theft and owes restitution of $121,722 (Doc. 111 at 149).  Travelers (BBC's insurer) seeks recovery in this civil action despite this restitution judgment attendant to Rodriguez's criminal prosecution.

**Conclusions of Law**

I.   Citibank Is a "Holder in Due Course"

A "holder in due course" possesses a negotiable instrument, payable to the holder, for value, in good faith, without "apparent evidence of forgery or alteration," and without notice of certain claims and defenses. See Fla. Stat. §§ 671.201(20), 673.3021(1).  A check is an obligation to pay a fixed amount to the payee. Fla. Stat. § 673.1041(1).  BBC issued to Citibank facially valid checks during the twenty months of Rodriguez's scheme.  In due course, Citibank posted the checks to the Rodriguezes'

AT&T Universal card accounts and extended credit based upon these monthly payments.

    A.    "For Value"

Citibank took each check "for value" pursuant to Section 673.3021(b)(1) and (2), Florida Statutes. "For value" means that the instrument is "issued or transferred as payment of . . . an antecedent claim against any person." Fla. Stat. § 673.3301(1)(c). Neither party disputes that each BBC check issued to Citibank paid the credit card debt of the Rodriguezes' and was "for value."

    B.    "In Good Faith"

Citibank accepted each check in good faith. Whether the holder accepts an instrument in "good faith" is both a subjective and objective inquiry – that is, whether the holder accepts the instrument with both "honesty in fact" and under "reasonable commercial standards." Fla. Stat. § 673.1031(d). Each BBC check processed by Citibank appeared neither forged, altered, incomplete, nor otherwise irregular. A credit card bank accepts in good faith a check by an employer on behalf of an employee. See Italia Imports, Inc. v. Weisberg and Lesk, 618 N.Y.S.2d 805 (N.Y. App. Div. 1994) (finding American Express a holder in due course after an employee misdirected a corporate check to pay her daughter's credit card account); Grand Rapids Auto Sales, Inc. v. MBNA America Bank, 227 F. Supp. 2d 721, 729 (W.D. Mich. 2002) ("Even if MBNA actually reviewed each check as part of its regular procedure, MBNA would still act in good faith by accepting the [employer's] checks because there are a number of legitimate reasons why an employer may pay the credit card debt of its employee.");

Hartford Accident & Indemnity Co. v. American Express Co., 74 N.Y. 2d 153, 163 (N.Y. 1989) (holding that American Express accepted in good faith an employer's check that satisfied an employee's personal debt).  Rather than unusual:

> [T]he use of corporate checks to pay employees' debts is an every day occurrence in the business world.  Employers often help an employee to maintain a residence as an inducement to continued employment in an area where living expenses are high.  Employers often pay for the entertainment of customers by an employee.  Employers often pay for travel and transportation expenses of an employee.

227 F. Supp. 2d at 727.

      C.      "Without Apparent Notice of Forgery or Alteration"

The parties dispute whether Citibank owed BBC a duty of inquiry for each check altered by Rodriguez and processed by Citibank.  "The parameters of a bank's duty to inquire are . . . 'narrowly circumscribed.'"  MBNA, 227 F. Supp. 2d at 726 (citing Sun 'N Sand, Inc. v. United California Bank, 21 Cal. 3d 671, 695 (Cal. 1978)).  "The duty arises only in circumstances where the check is physically presented to the bank for negotiation by the dishonest employee and the bank, through its agent, has the opportunity to inspect the check for irregularities that should alert the bank that fraud is amiss."  MBNA, 227 F. Supp. 2d at 726.  No court has ever extended "the duty of inquiry to a situation such as this where a bank receives a check in payment for a credit card account."  227 F. Supp. 2d at 726.  "[T]o extend such a duty to the checks [Citibank] received . . . would be inconsistent with the policy considerations generally applicable to the determination of a duty in negligence cases."  227 F. Supp. 2d at 726.

Citibank owed no duty of inquiry to BBC (or Travelers) under the governing circumstances.  Citibank received approximately thirty million credit card payment

envelopes each month from 2000 to 2002 (Doc. 112 at 28, 189). Standard practice in the credit card industry imposes no duty to inquire about a check remitted by an issuer on behalf of the issuer's employee. MBNA, 227 F. Supp. 2d at 726. Visiting on a credit card bank duty of inquiry in these circumstances "result[s] in shifting the risk of loss from the party in the best position to discover the loss to the party least likely to discover it." 227 F. Supp. 2d at 727.

Payment of an employee's credit card debt imposes no duty of inquiry because "there are legitimate reasons for an employer's payment of [an] employee's credit card debt." MBNA, 227 F. Supp. 2d at 728. Without an unreasonable, disproportionate, and unwarranted exertion, Citibank's employees cannot confirm a valid account number upon each receipt of a check drawn on another's account. 227 F. Supp. 2d at 727; see also Federal Insurance Company v. Banco de Ponce, 582 F. Supp. 1388, 1393 (D.P.R. 1984) (dismissing an employer's claims against a bank for a corporate officer who schemed to pay his credit card debt with corporate funds because the bank "had no duty to question, challenge, or even inquire as to the third-party payment . . ."). Citibank demonstrates receipt of each check "without notice" of an unauthorized signature or alteration and without "knowledge" of inauthenticity that signals a breach of fiduciary duty. Absent legal "knowledge" the Uniform Commercial Code imposes on Citibank no duty to investigate.

Like the plaintiff in MBNA, BBC "could have protected itself by examining its returned checks or its monthly bank statements over the course of the twenty . . . month period during which [Rodriguez] sent the [BBC] checks to [Citibank] . . . [or] put in place

- 6 -

security or screening measures or bonding to protect against employee theft and dishonesty." MBNA, 227 F. Supp. 2d at 727.  From 2000 to 2002, Citibank received approximately three million credit card payments each month from non-cardholders (Doc. 112 at 189, Doc. 113 at 78).  "In order to inspect each of those payments, [Citibank] would be required to hire many new employees, resulting in increased cost to [Citibank], and, ultimately, an increase in the cost of credit to the consumer." 227 F. Supp. 2d at 727 (holding that the employer is "the party in the best position to discover the loss" from employee dishonesty.).  This "severe and unnecessary" burden "would produce negative consequences for consumers and the banking industry in general and would be contrary to law."  227 F. Supp. 2d at 727.

Through fact and expert testimony Citibank demonstrates maintenance of a commercially reasonable fraud protection procedure to guard against the type of fraud Travelers alleges (Doc. 112 at 29; Doc. 114 at 22).  Each BBC check was signed by authorized BBC signatories, printed on BBC stock, and sent in BBC envelopes. Citibank processes a check sent in non-standard remittance envelope and without a payment coupon through a fraud protection group named "CREW" ("credit fraud early warning").  Citibank procedure requires CREW to contact the drawer's bank to confirm available funds.  Citibank did so.  Citibank also contacted Rodriguez at home and at BBC to verify the transactions.  (Doc. 111 at 163, 171, 272).  After confirming this information, Citibank processed BBC's checks.

In the credit card industry, the named payee on a check need not exactly match the endorser.  A credit card bank's acceptance of a check is commercially reasonable if

- 7 -

the name of the payee of the check substantially resembles the name of the endorser of the check.  "When millions of checks are paid every day, it would be unduly burdensome to adopt a 'mirror image' requirement just to protect companies from their own errant employees."  Basse Truck Lines, Inc. v. First State Bank, 949 S.W.2d 17 (Tex. Ct. App. 1997); Fla. Stat. § 673.4051(3) (endorsement in the name of a "substantially similar" endorser is sufficient).

Further, the credit card industry's commercially reasonable standard of good faith and due care permits a credit card bank to accept a check from someone other than the cardholder, to accept a corporate check payable to a corporate employee, to accept a check with a handwritten account number, and to accept more than one check to the same account in the same billing cycle because none of these circumstances presents a reliable indicator of fraud (that is, each circumstance occurs commonly, in the ordinary course of business, and without adverse consequence) and none of these circumstances accompanies fraud with sufficient frequency or with sufficient magnitude of loss to warrant a reasonable credit card bank's questioning the validity of the issuer's check.  In each of these circumstances the corporate issuer of the check, in the ordinary course of business, is best positioned to detect the fraudulent withdrawal of money from the corporation's own account.

D.      "Without Notice of Claims or Defenses"

A "holder" is on "notice" if the holder actually knows, the holder receives notice, or in the facts and circumstances the holder "has reason to know."  Fla. Stat. § 671.201(25).  Because each check sent by Rodriguez was neither "overdue" nor

"dishonored," Citibank indisputably received each check without notice of a valid or legitimate claim or defense. Fla. Stat. § 673.3021(b)(3). Citibank received each check "without notice that the instrument contain[ed] an unauthorized signature or ha[d] been altered." Fla. Stat. § 673.3021(b)(4). Each check was printed on BBC stock and contained two valid BBC signatures. Citibank received each check "without notice of any claim" of BBC to any right in each check. Fla. Stat. §§ 673.3061; 673.3071. Citibank remained unaware of Rodriguez's wrongdoing until August, 2002, when Messner telephoned Citibank. Before Messner's notice, Citibank had no duty to investigate the circumstances attending BBC's checks. National Union Fire Ins. Co. v. Woodhead, 1989 WL 53004, *8 (S.D.N.Y. 1989) ("[A]bsent notice, the Bank had no general duty to investigate."). Citibank received the BBC checks in good faith, as a holder in due course, and free of BBC's claim.

II.     Citibank Did Not Breach A Duty Of Care

Travelers also fails to prove facts sufficient to support a negligence claim. To claim negligence a plaintiff must prove "a legal duty on the part of the defendant towards the plaintiff under the circumstances." Humphreys v. Gen. Motors Corp., 839 F. Supp. 822, 829 (S.D. Fla. 1993). "[A]bsent a duty of care there can be no tort of negligence." Xanthopolous v. Thomas Cook, Inc., 629 F. Supp. 164, 174 (S.D.N.Y. 1985) (citing Palsgraf v. Long Island R.R. Co., 248 N.Y. 339 (N.Y. 1928)). Citibank owed BBC no duty to question the validity of the BBC checks before processing.

"The determination [of] the existence of a duty of care in a negligence action is a question of law." Hewlett-Packard v. Brother's Trucking Enterprises, Inc., 373 F. Supp.

2d 1349, 1352 (S.D. Fla. 2005). "The duty element of negligence focuses on whether the defendant's conduct foreseeably created a broader 'zone of risk' that poses a general threat of harm to others." McCain v. Fla. Power Corp., 593 So. 2d 500, 502 (Fla. 1992). However, "a legal duty is not established by evidence of forseeability alone . . . ." Kaisner v. Kolb, 543 So. 2d 732, 735 (Fla. 1989). Rather, "[t]here must also be allegations that the defendant's conduct created or controlled the risk." Swett v. U.S., 2007 WL 1017664 at *3 (M.D. Fla. Mar. 30, 2007). The "duty may arise from several sources: '1) legislative enactments or administration regulations; 2) judicial interpretation of such enactments; 3) other judicial precedent; and 4) a duty arising from the general facts of the case.'" Hewlett-Packard, 373 F. Supp. 2d at 1353 (citing Clay Elec. Co-op., Inc. v. Johnson, 873 So. 2d 1182, 1185 (Fla. 2003)).

Citing no legislative or judicial authority, the plaintiff seeks to expand the defendant's duty beyond that which is reasonable under "the general facts of the case." Hewlett-Packard, 373 F. Supp. 2d at 1353. However, nothing on the face of any BBC check reasonably caused suspicion by Citibank. Rather, each check was properly signed and printed on BBC stock. After receipt of each facially legitimate check the defendant "acted in the way any normal [credit card] business would in the course of a legitimate commercial transaction." J.H. Stevedoring Co. v. Fasig-Tipton Co., Inc., 275 F. Supp. 2d 644, 650 (E.D. Pa. 2003) (granting summary judgment for the defendant on the plaintiff's negligence claim because the defendant "owed no fiduciary duty to examine and investigate every check that was received."). As in MBNA and Fasig-Tipton, the plaintiff was "in the best position to prevent [the] theft." Fasig-Tipton, 275 F.

Supp. 2d at 650.  Citibank "was not aware of any suspicious circumstances and could not have foreseen or prevented harm to [BBC]."  <u>MBNA</u>, 227 F. Supp. 2d at 727.  BBC, rather than Citibank, "created [and] controlled the risk."  <u>Swett</u>, 2007 WL at *3.  The plaintiff's negligence claim fails.  <u>Quezada v. Circle K Stores, Inc.</u>, 2005 WL 3434060 (M.D. Fla. Dec. 13, 2005) (granting summary judgment because the plaintiff failed to establish evidence of a duty owed to the plaintiff).

The clerk is directed to (1) enter **JUDGMENT FOR THE DEFENDANT** on Count III of the plaintiff's complaint (2) terminate any pending motion and (3) close the case.

ORDERED in Tampa, Florida, on September 28, 2007.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

cc:     US Magistrate Judge
        Courtroom Deputy